## UNITED STATES DISTRICT COURT
## DISTRICT OF DELAWARE

| | |
|---|---|
| MARY PHILIPS, | ) Case No. |
| Plaintiff, | ) |
| v. | ) **COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS** |
| SPLUNK INC., GRAHAM V. SMITH, MARK CARGES, KENNETH HAO, PATRICIA B. MORRISON, YAMINI RANGAN, ELISA STEELE, GARY STEELE, DAVID TUNNELL, DENNIS L. VIA, LUIS VISOSO, and RICHARD WALLACE, | ) **JURY TRIAL DEMANDED** |
| Defendants. | ) |

Plaintiff Mary Philips ("Plaintiff"), upon information and belief, including an examination and inquiry conducted by and through her counsel, except as to those allegations pertaining to Plaintiff, which are alleged upon personal belief, alleges the following for her Complaint:

## NATURE OF THE ACTION

1. Plaintiff brings this action against Splunk, Inc. ("Splunk" or the "Company") and its corporate directors for violating Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a), 78t(a), and U.S. Securities and Exchange Commission ("SEC") Rule 14a-9, 17 C.F.R. §240.14a-9 ("Rule 14a-9"), in connection with the proposed acquisition of the Company by Cisco Systems Inc. ("Cisco").[1]

2. On September 20, 2023, Splunk entered into an Agreement and Plan of Merger

---

[1] The proposed business combination described herein is referred to as the "Proposed Transaction."

(the "Merger Agreement") with Cisco and Cisco's wholly owned subsidiary Spirit Merger Corp. ("Merger Sub"). The Merger Agreement provides that Company stockholders will receive $157.00 per share of Splunk common stock in connection with the Proposed Transaction.

3. The Company's corporate directors subsequently authorized the October 30, 2023, filing of a materially incomplete and misleading Schedule 14A Definitive Proxy Statement (the "Proxy Statement") with the SEC. The Proxy Statement, which recommends that Company unitholders vote in favor of the Proposed Transaction, omits or misrepresents material information necessary and essential to that decision. Defendants authorized the issuance of the false and misleading Proxy Statement in violation of Sections 14(a) and 20(a) of the Exchange Act.

4. It is imperative that the material information omitted from the Proxy Statement is disclosed to the Company's unitholders prior to the forthcoming vote so that they can properly exercise their corporate suffrage rights, among other things.[2]

5. For these reasons and as set forth in detail herein, Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Transaction unless and until the material information discussed below is disclosed to the Company's unitholders or, in the event the Proposed Transaction is consummated, to recover damages resulting from the defendants' violations of the Exchange Act.

**JURISDICTION AND VENUE**

6. This Court has jurisdiction over the claims asserted herein for violations of

---

[2] The Special Meeting at which Splunk unitholders are asked to approve Proposed Transaction currently is scheduled for November 29, 2023.

Sections 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder pursuant to Section 27 of the Exchange Act, 15 U.S.C. § 78aa, and 28 U.S.C. § 1331 (federal question jurisdiction).

7. Personal jurisdiction exists over the defendants because each defendant either conducts business in or maintains operations within this District or is an individual with sufficient minimum contacts with this District to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

8. Venue is proper in this District pursuant to 28 U.S.C. § 1391 because defendants are found or are inhabitants or transact business in this District.

## THE PARTIES

9. Plaintiff is, and has been at all times relevant hereto, the owner of Splunk common units.

10. Defendant Splunk is a Delaware limited Company, with its principal executive offices located at 270 Brannan Street, San Francisco, California 94107.  Splunk's shares trade on the Nasdaq Global Select Market under the ticker symbol "SPLK."  Splunk develops and markets cloud services and licensed software solutions in the United States and internationally. The Company offers the Unified Security and Observability Platform, which includes: (i) Splunk Security, comprised of Splunk Enterprise Security, Splunk Security Orchestration, Automation and Response, Splunk User Behavior Analytics, Splunk Attack Analyzer and Splunk Mission Control, Splunk Security helps security leaders fortify their organization's digital resilience by mitigating cyber risk and meeting compliance requirements; and (ii) Splunk Observability, comprised of Splunk IT Service Intelligence, and Splunk Observability Cloud, which provides fully integrated capabilities for Splunk Application Performance Monitoring,

Splunk Infrastructure Monitoring, Splunk Real User Monitoring, and Splunk Synthetic Monitoring, Splunk Observability provides visibility across the full stack of infrastructure, applications, and the digital customer experience. Splunk also provides application programming interfaces, software development kits, and other interfaces.

11.     Defendant Graham V. Smith is and has been Chair of the Board and a director of the Company at all times relevant hereto.

12.     Defendant Mark Carges is and has been a director of the Company at all times relevant hereto.

13.     Defendant Kenneth Hao is and has been a director of the Company at all times relevant hereto.

14.     Defendant Patricia B. Morrison is and has been a director of the Company at all times relevant hereto.

15.     Defendant Yamini Rangan is and has been a director of the Company at all times relevant hereto.

16.     Defendant Elisa Steele is and has been a director of the Company at all times relevant hereto.

17.     Defendant Gary Steele is and has been President, Chief Executive Officer, and a director of the Company at all times relevant hereto.

18.     Defendant David Tunnell is and has been a director of the Company at all times relevant hereto.

19.     Defendant Dennis L. Via is and has been a director of the Company at all times relevant hereto.

20. Defendant Luis Visoso has been director of the Company at all times relevant hereto.

21. Defendant Richard Wallace is and has been a director of the Company at all times relevant hereto.

22. Defendants identified in paragraphs 11-22 are collectively referred to herein as the "Board" or the "Individual Defendants."

## SUBSTANTIVE ALLEGATIONS

**The Proposed Transaction**

23. On September 21, 2023, Cisco and the Company jointly announced in relevant part:

> **San Jose and San Francisco, Calif., September 21, 2023** — Cisco (NASDAQ: CSCO) and Splunk (NASDAQ: SPLK), the cybersecurity and observability leader, today announced a definitive agreement under which Cisco intends to acquire Splunk for $157 per share in cash, representing approximately $28 billion in equity value. Upon close of the acquisition, Splunk President and CEO Gary Steele will join Cisco's Executive Leadership Team reporting to Chair and CEO Chuck Robbins.
>
> The acquisition builds on Splunk's heritage of helping organizations enhance their digital resilience and will accelerate Cisco's strategy to securely connect everything to make anything possible. The combination of these two established leaders in AI, security and observability will help make organizations more secure and resilient.
>
> "We're excited to bring Cisco and Splunk together. Our combined capabilities will drive the next generation of AI-enabled security and observability," said Chuck Robbins, chair and CEO of Cisco. "From threat detection and response to threat prediction and prevention, we will help make organizations of all sizes more secure and resilient."
>
> "Uniting with Cisco represents the next phase of Splunk's growth journey, accelerating our mission to help organizations worldwide become more resilient, while delivering immediate and compelling value to our shareholders," said Gary Steele, president and CEO of Splunk.

"Together, we will form a global security and observability leader that harnesses the power of data and AI to deliver excellent customer outcomes and transform the industry. We're thrilled to join forces with a long-time and trusted partner that shares our passion for innovation and world-class customer experience, and we expect our community of Splunk employees will benefit from even greater opportunities as we bring together two respected and purpose-driven organizations," Steele added.

In today's hyperconnected world, data is everywhere, with every organization relying on it to run their business and make mission-critical decisions every day. Factoring in the acceleration and adoption of generative AI, expanding threat surfaces, and multiple cloud environments, it creates a level of complexity that is unlike anything organizations have faced. Organizations need a better way to manage, protect, and unlock data's true value and stay digitally resilient.

Together, Cisco and Splunk will address these challenges head on.

The combination of these two established leaders with complementary capabilities in AI, security and observability will unlock the true value of data and will help make organizations of all sizes more secure and digitally resilient.

Specifically, Splunk's security capabilities complement Cisco's existing portfolio, and together, will provide leading security analytics and coverage from devices to applications to clouds.

Cisco and Splunk's complementary capabilities will provide observability across hybrid and multi-cloud environments enabling the company's customers to deliver smooth application experiences that power their digital businesses. Cisco and Splunk are well positioned to help customers responsibly harness the power of AI given their substantial scale, visibility into data, and foundation of trust.

The union of these two organizations will allow for greater investments in new solutions, accelerated innovation, and increased global scale to support the needs of customers of all sizes.

Cisco's acquisition of Splunk will also build upon both companies' reputations for being purpose-driven with similar values, strong cultures, and incredibly talented teams. The acquisition will unite two "Great Places to Work" with a shared passion for innovation and inclusion and will remain a great place to work and the premier place for
 software talent.

**Transaction Details**

Under the terms of the agreement, Cisco intends to acquire Splunk for $157 per share in cash, representing approximately $28 billion in equity value. The transaction is expected to be cash flow positive and gross margin accretive in the first fiscal year post close, and non-GAAP EPS accretive in year two. Additionally, it will accelerate Cisco's revenue growth and gross margin expansion.

The transaction will not impact Cisco's previously announced share buyback program or dividend program.

The acquisition has been unanimously approved by the boards of directors of both Cisco and Splunk. It is expected to close by the end of the third quarter of calendar year 2024, subject to regulatory approval and other customary closing conditions including approval by Splunk shareholders.

For further information regarding all terms and conditions contained in the definitive agreement, please see Cisco's Current Report on Form 8-K, which will be filed in connection with the transaction.

**Advisors**

Tidal Partners LLC is acting as financial advisor to Cisco, Simpson Thacher & Bartlett LLP is acting as legal counsel, and Cravath, Swaine & Moore LLP is acting as regulatory counsel. Qatalyst Partners and Morgan Stanley & Co. LLC are acting as financial advisors to Splunk and Skadden, Arps, Slate, Meagher & Flom LLP is acting as legal counsel.

**The Materially Incomplete and Misleading Proxy Statement**

24. The Board caused to be filed the materially incomplete and misleading Proxy Statement with the SEC on October 30, 2023  The Proxy Statement, which recommends that Splunk unitholders vote their units in favor of the Proposed Transaction, fails to disclose material information to Company unitholders, or provides them with materially misleading information, concerning: (a) the financial forecasts for Splunk and CISCO; (b) the financial analyses that support the fairness opinion provided by the Company's financial advisors, Qatalyst Partners LP ("Qatalyst") and Morgan Stanley & Co. LLC ("Morgan Stanley"); and

(c) potential conflicts of interest faced by Morgan Stanley.

*Material Misrepresentations and/or Omissions Concerning the Financial Forecasts for the Company*

25. The Proxy Statement fails to disclose material information concerning the Company's financial forecasts, including the line items underlying projected Non-GAAP Operating Income and Unlevered Free Cash Flow, each with respect to the Company's "Baseline Management Projections," "Sensitivity 1 Projections," and "Sensitivity 2 Projections."

26. The Proxy Statement further fails to disclose: (a) the Interim Management Projections reviewed at the May 2, 2023, Board meeting; and (b) the Updated Interim Management Projections prepared following the second quarter of fiscal year 2024 and the Sensitivity Cases.[3]

27. The Proxy statement further fails to disclose the "third-party research analyst consensus estimates of the future financial performance of the Company as of September 19, 2023 (which [the Proxy Statement] refer[s] to as the 'Street Estimates')" utilized by Qatalayst. *Id.* at 45.

28. Similarly, in connection with Morgan Stanley's presentation to the Board on September 20, 2023 (the day Morgan Stanley delivered its fairness opinion), Splunk management approved the inclusion of "certain unaudited projections of Splunk's financial results based on publicly available estimates of Morgan Stanley Research, as well as certain

---

[3] *See* Proxy Statement at 33-34.  The Proxy Statement further fails to disclose a summary of the changes made from the Updated Interim Management Projections and the Sensitivity Cases to arrive at the Baseline Management Projections, the Sensitivity 1 Projections and the Sensitivity 2 Projections approved by the Board and relied upon by Qatalyst and Morgan Stanley in connection with their fairness opinions. *See id.* at 36, 61-62.

related extrapolations prepared by Morgan Stanley (the '**Research Case**')." *Id.* at 52 (emphasis in original). The Proxy Statement fails, however, to disclose a summary of the Research Case.

29. Moreover, as to the *Discounted Cash Flow Analysis* of the Company performed by Morgan Stanley, the Proxy Statement sets forth:

> Morgan Stanley first ***calculated*** the estimated unlevered free cash flow, which is defined as non-GAAP adjusted earnings before interest, taxes, depreciation and amortization (unburdened by stock-based compensation), (i) less taxes, (ii) less stock-based compensation expense, (iii) less capital expenditures, (iv) less capitalized deferred commissions, (v) plus amortization of deferred commissions, (vi) plus or minus changes in deferred revenue, and (vii) plus or minus changes in net working capital, for calendar years 2023 through 2033, **which estimated unlevered free cash flow were provided for Morgan Stanley's use by Splunk's management**.

*Id.* at 55 (emphasis added). The Proxy Statement must clarify whether the unlevered free cash flows utilized by Morgan Stanley were (a) calculated by Morgan Stanley or (b) provided by Splunk management.

*Material Misrepresentations and/or Omissions Concerning Qatalyst's and Morgan Stanley's Financial Analyses*

30. The Proxy Statement fails to disclose material information concerning Qatalyst's and Morgan Stanley's financial analyses.

31. As to the *Discounted Cash Flow Analysis* performed by Qatalyst, the Proxy Statement fails to disclose the Company's terminal values, net debt, and fully diluted outstanding shares.

32. As to the *Selected Companies Analysis* performed by Qatalyst, the Proxy Statement fails to disclose: (a) the individual financial metrics for each of the selected companies analyzed by Qatalyst; (b) the Company's fiscal year 2025 revenue based on the Street Estimates; (c) the Company's fiscal year 2025 levered free cash flow estimates based on

the Baseline Management Projections, Management Sensitivities and Street Estimates; and (d) the Company's fully diluted outstanding shares.

33. As to the *Selected Transactions Analysis* performed by Qatalyst, the Proxy Statement fails to disclose: (a) the individual financial metrics for each of the selected transactions analyzed by Qatalyst; (b) the Company's next-twelve-months' EBITDA and levered free cash flow based on the Street Estimates; and (c) the Company's fully diluted outstanding shares.

34. As to the *Discounted Cash Flow Analysis* performed by Morgan Stanley, the Proxy Statement fails to disclose the Company's terminal values, net debt, and fully diluted outstanding shares.

35. As to the *Discounted Equity Value Analysis* performed by Morgan Stanley, the Proxy Statement fails to disclose: (a) the Company's calendar year 2026 revenue based on the Research Case; and (b) the levered free cash flow estimates used in the analysis.

36. As to the *Public Trading Comparables Analysis* performed by Morgan Stanley, the Proxy Statement fails to disclose the individual multiples and financial metrics for each of the selected companies analyzed by Morgan Stanley.

37. As to the *Precedent Transactions Multiples Analysis* performed by Morgan Stanley, the Proxy Statement fails to disclose: (a) the individual financial metrics for each of the selected transactions analyzed by Morgan Stanley; and (b) the Company's estimated NTM levered free cash flow and estimated NTM revenue based on the Research Case.

38. As to the *Illustrative Precedent Transaction Premiums* analysis performed by Morgan Stanley, the Proxy Statement fails to disclose: (a) the identities of the transactions analyzed; and (b) the individual premiums for each transaction.

39. As to the *Equity Research Analysts' Future Price Targets* analysis performed by Morgan Stanley, the Proxy Statement fails to disclose: (a) the individual price targets observed; and (b) the sources thereof.

*Material Misrepresentations and/or Omissions Concerning Morgan Stanley's Potential Conflicts of Interest*

40. The Proxy Statement fails to disclose material information concerning potential conflicts of interest faced by Morgan Stanley, including an estimate of the amount of "additional value" Morgan Stanley anticipates it will realize in connection with the 2027 Base Capped Call Transaction[4] as a result of the Proposed Transaction.[5]

41. The Proxy Statement similarly fails to disclose a summary of any materials Morgan Stanley provided to the Board or Company management with respect to the potential effects of the announcement and consummation of the Proposed Transaction (or any acquisition of the Company) on the 2027 Base Capped Call Transaction to which Morgan Stanley is a counterparty.

42. The Proxy Statement similarly fails to disclose the details of any employment and retention-related discussions and negotiations that occurred between Splunk insiders and CISCO, who participated in all such communications, when they occurred and their content.

43. The omission of the above-referenced information renders statements in the "Management Projections," "Opinions of Qatalyst Partners LP and Morgan Stanley & Co.

---

[4] "2027 Base Capped Call Transaction" refers to the privately negotiated capped call transaction Splunk entered into with Morgan Stanley, in addition to Barclays Bank PLC, Bank of America, N.A. and JPMorgan Chase Bank, National Association, New York Branch (together with Morgan Stanley, the "2027 Capped Call Counterparties"), on June 2, 2020, in connection with the pricing of Splunk's 1.125% Convertible Senior Notes due 2027. *See id.* at 60.

[5] *See* Proxy Statement at 60.

LLC," "Background of the Merger," and "Capped Call Transactions" sections of the Proxy Statement materially incomplete and misleading in contravention of the Exchange Act.

44. Absent disclosure of the foregoing material information prior to the unitholder vote, Plaintiff and the other unitholders of the Company will be unable to make a sufficiently informed decision in connection with the Proposed Transaction and are thus threatened with irreparable harm warranting the injunctive relief sought herein.

## CLAIMS FOR RELIEF

## COUNT I

**Claims for Violation of Section 14(a) of the Exchange Act and Rule 14a-9 Promulgated Thereunder Against the Individual Defendants and Splunk**

45. Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

46. The Individual Defendants disseminated the false and misleading Proxy Statement, which contained statements that, in light of the circumstances under which they were made, omitted to state material facts necessary to make the statements therein not materially misleading, in violation of Section 14(a) of the Exchange Act and Rule 14a-9. Splunk is liable as the issuer of these statements.

47. The Proxy Statement was prepared, reviewed, and/or disseminated by the Individual Defendants. By virtue of their positions within the Company, the Individual Defendants were aware of this information and their duty to disclose this information in the Proxy Statement.

48. The Individual Defendants were at least negligent in filing the Proxy Statement with these materially false and misleading statements.

49. The omissions and false and misleading statements in the Proxy Statement are material in that a reasonable unitholder will consider them important in deciding how to vote on the Proposed Transaction. In addition, a reasonable investor will view a full and accurate disclosure as significantly altering the total mix of information made available in the Proxy Statement and in other information reasonably available to unitholders.

50. The Proxy Statement is an essential link in causing Plaintiff and the Company's unitholders to approve the Proposed Transaction.

51. By reason of the foregoing, defendants violated Section 14(a) of the Exchange Act and Rule 14a-9 promulgated thereunder.

52. Because of the false and misleading statements in the Proxy Statement, Plaintiff is threatened with irreparable harm.

## COUNT II

### Claims for Violation of Section 20(a) of the Exchange Act
### Against the Individual Defendants

53. Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

54. The Individual Defendants acted as controlling persons of Splunk within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as officers and/or directors of Splunk and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Proxy Statement, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that Plaintiff contends are false and misleading.

55. Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy Statement alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause them to be corrected.

56. Each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control and influence the transactions giving rise to the violations as alleged herein and exercised the same. The Proxy Statement contains the unanimous recommendation of the Individual Defendants to approve the Proposed Transaction. They were thus directly involved in the making of the Proxy Statement.

57. By virtue of the foregoing, the Individual Defendants violated Section 20(a) of the Exchange Act.

58. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) of the Exchange Act and Rule 14a-9, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of defendants' conduct, Plaintiff is threatened with irreparable harm.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment and preliminary and permanent relief, including injunctive relief, in her favor on behalf of the Company, and against defendants, as follows:

    A. Preliminarily and permanently enjoining defendants and all persons

acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction and any vote on the Proposed Transaction, unless and until defendants disclose and disseminate the material information identified above to Company unitholders;

   B. In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages to Plaintiff;

   C. Declaring that defendants violated Sections 14(a) and/or 20(a) of the Exchange Act;

   D. Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

   E. Granting such other relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all claims and issues so triable.

Dated: November 11, 2023   **LONG LAW, LLC**

     By: */s/ Brian D. Long*
       Brian D. Long (#4347)
       3828 Kennett Pike, Suite 208
       Wilmington, DE 19807
       Telephone: (302) 729-9100
       Email: BDLong@LongLawDE.com

       *Attorneys for Plaintiff*